Charles E. McKEEVER, Elvin P. Ross

v.

ATLANTIC SPRING AND MANUFAC-
TURING COMPANY, INC.

No. 78–313.

United States District Court,
E. D. Pennsylvania.

Dec. 15, 1980.

Doris J. Dabrowski, Philadelphia, Pa., for plaintiffs.

Jeffrey L. Pettit, Hepburn, Ross Wilcox & Putnam, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiffs in this action, Charles McKeever and Elvin Ross, brought suit alleging that their employer, Atlantic Spring and Manufacturing Company, Inc., discriminated against them because they are black, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* Atlantic now moves for partial summary judgment, contending that both plaintiffs failed to comply with various procedural requirements under Title VII, as a result of which this court lacks jurisdiction over some of the claims raised in the complaint.

### I. *Ross' Claims*

The procedural history of Ross' claims is as follows. On October 15, 1973, Ross filed a complaint with the Equal Employment Opportunity Commission (EEOC). In it, he alleged that Atlantic denied him a promotion because of his race, that Atlantic generally denied blacks advancement in the company, and that it made attempts to restrict its hiring to whites. On April 3, 1975, Ross entered into a conciliation agreement with Atlantic through the EEOC. Atlantic agreed, *inter alia*, to refrain from discrimination against blacks, to take certain affirmative action in seeking minorities

in its hiring, and to pay Ross $750. As part of the agreement, Ross agreed not to sue Atlantic on any charges which he had brought or might have brought before the EEOC, provided that Atlantic performed its obligations under the agreement. The agreement further provided for the EEOC to monitor the company for two years to determine whether it had complied with the agreement.

On September 30, 1975, Ross filed a complaint with the EEOC charging that management representatives at Atlantic had retaliated against him for filing his original charges by taking unwarranted disciplinary action against him. On June 15, 1977, Ross amended that complaint to add a restatement of his original charge that he, and blacks generally, were denied promotions because of their race. On October 31, 1977, the EEOC determined that there was no probable cause to believe that a violation had occurred, and issued Ross a right to sue letter. Ross filed the instant suit on January 27, 1978.

### A. *Waiver of Ross' Claim*

Atlantic first contends that, under the terms of the conciliation agreement, Ross waived his right to sue. It argues that Ross had agreed to sue only if Atlantic violated the agreement and that the EEOC was to determine whether a violation had occurred. Since the EEOC determined that there was no probable cause to believe that a violation had occurred, Ross, therefore, had violated his covenant not to sue.

■ The Supreme Court has suggested in *dicta* that it is permissible for an employee to waive his rights under Title VII as part of a voluntary settlement. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). Two circuits have followed the lead suggested by *Alexander* and have held that a waiver of the right to sue is a permissible condition in a Title VII settlement. *United States v. Trucking Employers, Inc.*, 561 F.2d 313 (D.C.Cir.1977); *United States v. Allegheny–Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975). If it is possible for an employee to waive unconditionally his

right to bring suit under Title VII, *a fortiori* it is permissible for an employee to consent to the conditional waiver agreed to by Ross here.

■ In discussing the possibility that an employee might waive his rights under Title VII, the Supreme Court made clear that if such waiver is permissible, "a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing." 415 U.S. at 52, n.11, 94 S.Ct. at 1020. *Accord, Trucking Employers, supra*, 561 F.2d at 318; *Allegheny-Ludlum Industries, supra*, 517 F.2d at 858. Here, although I agree with Atlantic that Ross plainly covenanted not to sue unless there was a violation of the conciliation agreement, it is not clear that Ross knowingly and voluntarily agreed that the EEOC would be the final arbiter of whether a violation in fact occurred.

The clause on which Atlantic relies states: "The Commission shall determine whether the Respondent has complied with the terms of this Agreement." This language can be interpreted, as Atlantic contends, as an agreement that no court action may be brought unless the EEOC first determines that Atlantic has violated the conciliation agreement; that, in effect, the parties agreed to abide by the EEOC's determination as to whether Atlantic had complied. It can also be interpreted, however, as simply an agreement that the EEOC will monitor Atlantic's compliance with no greater effect than in the case of the filing of an original complaint with EEOC, *i. e.*, that a finding of "no probable cause" by that body has no effect on the employee's statutory right to seek redress in the courts.

■ It is possible for an employee to agree to the kind of waiver which Atlantic contends is present in this case, but in order for it to be effective, it must be clear that the employee understood that he was giving up his right to seek redress in the courts. The parties may well have intended for the EEOC to act as final arbiter in this case, but the language of this purported waiver

clause is sufficiently ambiguous that I cannot conclude as a matter of law that Ross "knowingly and voluntarily" waived his right to sue. Atlantic is, of course, free to raise the waiver issue as a defense at trial, and to attempt to prove that the parties intended the settlement agreement to bar suit in the absence of a finding of non–compliance by the EEOC.

### B. *The Scope of Ross' Complaint*

■ Because Title VII plaintiffs are required to exhaust administrative remedies before commencing suit, the extent to which a court may entertain an action is determined by the scope of the EEOC investigation. Jurisdiction over a civil action is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976). Atlantic contends that allegations in paragraph twelve of Ross' complaint go beyond the scope of the charges which he filed with the EEOC.

■ The allegations of paragraph twelve can be grouped in three categories: allegations with respect to discrimination in hiring, in promotion, and in evaluation and discipline on the job. I view all three of Ross' charges with the EEOC as related: the first charge in 1973 led to the conciliation agreement; the second charge in 1975 in effect charged a breach of that agreement and retaliation; and the amended charge in 1977 recapitulated Ross' claims going back to 1973, and added further charges of retaliation. If the charges are read as being related to one ongoing dispute over discrimination by Atlantic, it is plain that I have jurisdiction over all of the allegations of discrimination in Ross' complaint.

■ In his 1973 charge to the EEOC, Ross alleged that Atlantic discriminated in its hiring and promotions, and generally denied blacks advancement in the company. This gave the EEOC sufficient notice to investigate his charges in these areas. Jurisdiction exists whenever the allegations of the civil suit are of the same type and character of discrimination as charged before the EEOC, *Flesch v. Eastern Pennsylvania Psychiatric Institute*, 434 F.Supp. 963, 970 (E.D.Pa.1977) (citing cases), and I am satisfied that Ross' complaint in this action with respect to hiring and promotions sufficiently tracks his original charges before the Commission.

■ With respect to Ross' allegations that he suffered retaliation and harassment on the job, the rule is broad enough to encompass "claims arising from new acts occurring during the pendency of the EEOC charge and reasonably related to or growing out of acts alleged in the charge," as well as "claims of retaliation for filing the charge." *Flesch, supra*, at 970. Because Ross complained of retaliation and unequal treatment on the job in his 1975 and 1977 charges before the commission, I am satisfied that the EEOC was given sufficient opportunity to investigate in these areas as well, and therefore I have jurisdiction over these aspects of Ross' complaint.

### C. *Enforcement of the Conciliation Agreement*

As an alternative theory of recovery, Ross seeks enforcement of the conciliation agreement as a contract under state law, and urges that I assume jurisdiction over the claim under the doctrine of pendent jurisdiction. Atlantic argues that if I were to give effect to the purported waiver clause in the conciliation agreement, then Ross would be limited to raising claims arising after 1977, with the result that the issues relating to the alleged breach do not derive from a common nucleus of operative fact. *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ Clearly, whether Atlantic discriminated against Ross is closely tied, if not identical, to the question of whether it violated the conciliation agreement. There-

fore exercise of pendent jurisdiction is proper.[1]

## II. *McKeever's Claims*

McKeever filed charges with the EEOC on June 8, 1977. On June 27, 1977, the EEOC deferred the charge to the Philadelphia Commission on Human Relations (PCHR). McKeever then wrote to the PCHR, asking that it waive jurisdiction over his complaints. On July 15, 1977, the PCHR granted McKeever's request and referred the case back to the EEOC. Atlantic contends that I lack jurisdiction over McKeever's complaint because he failed to permit the local agency charged with responsibility for conciliating such charges a chance to operate, in violation of 42 U.S.C. § 2000e–5(c).

This is not a case in which McKeever totally bypassed the PCHR, thereby depriving it of the opportunity to decide whether to investigate the case. The narrow issue presented by this case is the effect of an employee's *request* that the local agency waive its jurisdiction in favor of the EEOC.

It is generally accepted that the purpose of § 2000e–5(c) is to " 'avoid premature interference by the Federal Government' in disputes better suited to resolution at the state administrative level." *Lombardi v. Margolis Wines & Spirits, Inc.,* 465 F.Supp. 99, 101 (E.D.Pa.1979); *Bell v. Wyeth Laboratories, Inc.,* 448 F.Supp. 133, 135 (E.D.Pa. 1978). Underlying § 2000e 5(c) are considerations of federalism which were expressed during the "tempestuous legislative proceedings that produced the Act." *Mohasco Corporation v. Silver,* 447 U.S. 807, 818, 100 S.Ct. 2486, 2493, 65 L.Ed.2d 532 (1980).

Because the principal concern of § 2000e 5(c) is that state and local agencies not be deprived of their power to act by the federal government,

> "courts applying that section have attached primary significance to the wishes of the state agency. Virtually anything

that the state agency does of its own initiative in order to be rid of a case may be sufficient to pass jurisdiction on to the EEOC via § 2000e–5(c), as long as the state agency had an *opportunity* for some period, however brief, to dispose of the matter."

*Lombardi, supra,* at 101. *E. g., Barela v. United Nuclear Corp.,* 462 F.2d 149 (10th Cir. 1972), *Bauman v. Union Oil Co.,* 400 F.Supp. 1021 (N.D.Cal.1973), (state agencies returned case to EEOC because of heavy workload); *Morgan v. Sharon, Pennsylvania Board of Education,* 445 F.Supp. 142 (W.D.Pa.1978), (plaintiff waived state proceedings pursuant to an agreement between the EEOC and local agency).

■ Inasmuch as the purpose of § 2000e–5(c) is to give state and local authorities the opportunity to act, I am persuaded that I have jurisdiction over McKeever's complaint, because the PCHR had such an opportunity here. Atlantic stresses the fact that it was McKeever who requested the PCHR to defer, and contends that because of this his claim is barred. However, McKeever has no power to bind the PCHR, and if the PCHR had wished for whatever reason, to process his case itself, it could have refused his request that it waive jurisdiction. Plainly the PCHR did not consider the request unusual, because on the printed form remanding the case to EEOC was a checklist of reasons for remand, including waiver of jurisdiction of the state agency by the complaining employee as one of the listed reasons. There is no allegation that McKeever threatened to withhold cooperation from the PCHR. Accordingly, no local policy was frustrated, and no local prerogative was usurped. The PCHR had the opportunity to investigate, but acceded to McKeever's request to waive jurisdiction. That it did so at McKeever's request is of no significance when one considers that the purpose of § 2000e–5(c) is to prevent feder-

---

1. My exercise of pendent jurisdiction over Ross' contract claim does not in any way preclude Atlantic's arguing to the jury that a suit to enforce the contract is barred by the absence of a condition precedent to suit, *i. e.,* a finding of a violation of the agreement by the EEOC.

al enforcement efforts from encroaching on those of the locality.[2]

After Atlantic initially filed this motion for partial summary judgment, I suspended action and granted McKeever leave to refile his charge before the PCHR. *See Oscar Mayer Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (approving this technique in suits brought under the Age Discrimination in Employment Act). The PCHR dismissed the charges as untimely, although it noted that if McKeever had not waived jurisdiction, and it had opened a file on his complaint, there was at least a possibility that it would have jurisdiction. Because I hold that McKeever's initial filing was timely and sufficient under § 2000e–5(c), there is no need to consider whether McKeever's subsequent filing suffices to give this court jurisdiction over his claim.

Defendant's motion for partial summary judgment will be denied.

2. Atlantic cites *Lombardi v. Margolis Wines & Spirits, Inc.*, 465 F.Supp. 99 (E.D.Pa.1979) to the effect that if an employee actively seeks waiver of local jurisdiction, he is barred from bringing suit in federal court. That issue was not before the court in the *Lombardi* case, consequently the statement was *obiter dictum*, and the case cited as authority, *Rios v. Enterprise Association Steamfitters Local Union No. 638*, 326 F.Supp. 198 (S.D.N.Y.1971), likewise does not rule on the issue.