Margaret GUYETTE and Mary
Mammano, Plaintiffs,

v.

STAUFFER CHEMICAL COMPANY, Ken
Meszaros, Art Arena, Howard Cooper
and William Christie, Defendants.

Civ. A. No. 81–245.

United States District Court,
D. New Jersey.

June 17, 1981.

As Corrected July 23, 1981.

Mindy M. Brook, Trenton, N. J., for plaintiffs.

Mark S. Dichter, Kenneth D. Kleinman, Morgan, Lewis & Bockius, Philadelphia, Pa., Frank H. Czajkowski, Westport, Conn., Gerald A. Hughes, Levy, Levy & Albert, Trenton, N. J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiffs, Margaret Guyette and Mary Mammano, bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against their former employer, Stauffer Chemical Company (Stauffer), and four Stauffer employees, Art Arena, William Christie, Howard Cooper and Ken Meszaros, for alleged discrimination in employment on the basis of sex. In addition to their Title VII claims, plaintiffs bring the pendent state law claims of assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, gross negligence, and intentional interference with contractual relations. Plaintiffs filed charges with New Jersey's Division on Civil Rights and the Equal Employment Opportunity Commission in 1979, and have received notices of right to sue on their Title VII claims from the Commission.

In their complaint, plaintiffs Guyette and Mammano allege that they were hired by Stauffer in 1973 and 1977, respectively, and that both held the position of Senior Laboratory Technician at the Company's Yardville, New Jersey plant during times relevant to the complaint. Defendants Arena, Cooper and Christie were supervisors in the laboratory in which plaintiffs worked; defendant Meszaros was an employee of the Company. Between 1977 and 1979, plaintiffs were the only women assigned to work in the laboratory.

During the course of their employment, plaintiffs allege, they were "sexually harrassed [sic], physically endangered, and verbally abused by co-workers and supervisors because they were female." Specifically, they claim, "[e]ach plaintiff was personally endangered by hazardous chemicals being placed in the plants above her desk and in her work area," and "[e]ach plaintiff was subject to harassment by her work product being stolen or otherwise ruined." Plaintiffs allege that they complained to their supervisors but were ignored, and that beginning in December, 1977, all defendants "maliciously, without just cause or excuse, and, with the willful intent to injure Plaintiffs, conspired to harass plaintiffs," ultimately resulting in their constructive discharge on March 23, 1979. The company is charged with "consistently and continuously operating under policies and practices" which fostered sexual harassment and endangered plaintiffs' physical well-being.

The matter is now before the court on defendants' motions: (1) to dismiss the state law claims on the ground that the court should not exercise its pendent jurisdiction; (2) to dismiss the Title VII claims as to defendant Meszaros on the ground that he is a non-supervisory employee; (3) to dismiss the Title VII claims against the individual defendants and the state tort law claims against all defendants for failure to plead with sufficient specificity to state a claim upon which relief may be granted; (4) to strike plaintiffs' claims for compensatory and punitive damages and demand for a jury trial; and (5) to quash the summonses against the individual defendants on the ground that they were not served in accordance with the Federal Rules of Civil Procedure.

## I. *Motion to Decline Pendent Jurisdiction*

■ Defendants move to dismiss plaintiffs' state law claims on the ground that the court should decline to exercise its pendent jurisdiction. The test for pendent jurisdiction, as set forth by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), requires a two-step determination: first, whether the court has power over the state law claims; and second, whether the court in its discretion should entertain them. *See also Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). A court has power if: (1) there is a federal claim with "substance sufficient to confer subject mat-

ter jurisdiction on the court"; (2) the state and federal claims "derive from a common nucleus of operative fact"; and (3) "plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1139.

If power has been found to exist, the court's discretion is guided by a number of factors. The principle justifications for the exercise of pendent jurisdiction are judicial economy, convenience and fairness to litigants; "if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Id.* at 726, 86 S.Ct. at 1139. Moreover, if "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," the state claims may be left for state court resolution. A close relationship between state law claims and questions of federal policy creates a strong argument in favor of the exercise of pendent jurisdiction. Factors "independent of jurisdictional considerations," however, "such as the likelihood of jury confusion in treating divergent theories of legal relief," may warrant dismissal of the state claims. *Id.* at 727, 86 S.Ct. at 1139. Needless decisions of state law are to be avoided as a matter of comity. *Id.* at 726, 86 S.Ct. at 1139. The Supreme Court has held, however, that "it is evident from *Gibbs* that pendent state law claims are not always, or even almost always, to be dismissed and not adjudicated. On the contrary, given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of those claims." *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

There can be little question of the court's power to hear the pendent state claims advanced here, and defendants apparently concede the point. Plaintiffs' claims under Title VII are substantial. *See Ludington v. Sambo's Restaurants,* 474 F.Supp. 480 (E.D.Wis.1979); *cf. Tomkins v. Public Service Electric and Gas Co.,* 568 F.2d 1044 (3d Cir. 1977). Furthermore, it is clear that the state and federal claims arise out of the same nucleus of operative fact, the alleged harassment of plaintiffs by co-workers and supervisors, and would ordinarily be tried in one proceeding.

Defendants vigorously contend, however, that the court should decline, in its discretion, to exercise pendent jurisdiction because: (1) the state law claims are inconsistent with and would tend to subvert Title VII policies, rights and remedies; and (2) the state law claims raise a variety of legal theories and issues which will predominate over the federal claim and tend to confuse a jury. Defendants cite a number of cases in which courts have declined, in Title VII actions, to exercise pendent jurisdiction over state law claims. *E. g., Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334 (S.D.N.Y. 1978), *aff'd mem.* 607 F.2d 995 (2d Cir. 1979); *Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168 (E.D.Mich.1978); *Van Hoomissen v. Xerox Corporation,* 368 F.Supp. 829 (N.D.Cal.1973). In this circuit, the question of pendent jurisdiction has been determined on a case-by-case basis. It has been upheld in some cases, *e. g., McKeever v. Atlantic Spring and Manufacturing Co.,* 502 F.Supp. 684 (E.D.Pa.1980); *Kyriazi v. Western Electric Co.,* 461 F.Supp. 894 (1978), *remedy awarded* 476 F.Supp. 335 (D.N.J.1979); *Aungst v. J.C. Penney Co.,* 456 F.Supp. 370 (W.D.Pa.1978); and declined in others, usually because the pendent claims involved unsettled questions of state law, *e. g., Morgan v. Sharon Pennsylvania Board of Education,* 445 F.Supp. 142 (W.D.Pa.1978); *Holden v. H.J. Heinz,* 21 FEP Cases 175 (W.D.Pa.1977); *Johnson v. University of Pittsburgh,* 435 F.Supp. 1328 (W.D.Pa.1977).

In this case, the interests of judicial economy, convenience and fairness to the litigants weigh heavily in favor of trying both state and federal claims in a single action. A sexual harassment theory of recovery under Title VII bears distinct similarities to, and to a large extent arises out of, common law torts such as assault and battery and intentional interference with

contractual relations. *See* EEOC Guidelines on Sexual Harassment, 29 C.F.R. § 1604.11, promulgated June, 1980. Consequently the evidence necessary to prove a Title VII harassment violation overlaps that necessary to prove underlying state law torts to a significant degree. To require the state claims to be tried in a separate forum would be duplicative and wasteful of the time and resources of the courts and litigants alike.

■ Defendants argue that the remedies available under state law, particularly compensatory and punitive damages and the right to a jury trial, would circumvent and subvert the equitable and remedial purposes of Title VII. *See Gerlach v. Michigan Bell Telephone Co., supra* at 1173. Since the doctrine of pendent jurisdiction, however, unlike that of federal pre-emption, determines not the scope of the remedies available but only the forum in which the claims are tried, it would seem a matter of indifference to the federal court whether the state law remedies complement those available under federal law. If the federal court were to decline pendent jurisdiction, the state law claims would presumably be litigated in the state courts, and the effect of the state law remedies upon Title VII policies would be the same. As long as other considerations of fairness and convenience weigh in favor of pendent jurisdiction, therefore, there is no reason why a federal court should refuse pendent jurisdiction simply because state law provides remedies above and beyond those provided by Congress.

Defendants further argue that the state law claims and remedies will predominate over the Title VII claims and remedies, and that the divergent legal theories will tend to confuse the jury. It does not appear, however, that the state issues here will "substantially predominate" over the federal issues. Plaintiffs' Title VII claims are widespread and comprehensive, and clearly form the mainstay of the action. In order to prove their claims under Title VII that the company created or willfully ignored an atmosphere in which sexual harassment thrived, plaintiffs will presumably have to

demonstrate individual acts of harassment in any event. To impose the additional deterrents of compensatory and perhaps punitive damages upon the individual tortfeasors will merely supplement the remedies available under Title VII, and need not confuse the issues.

Because the advantages of trying all of plaintiffs' claims in one action are great and the state law claims should neither unduly complicate the issues nor substantially predominate over the federal claims, I conclude that the exercise of pendent jurisdiction is appropriate in this case. Defendants' motion to dismiss the state law claims as beyond the court's pendent jurisdiction will therefore be denied.

II. *Motion to Dismiss as to Defendant Meszaros*

Defendants move to dismiss the complaint as to defendant Ken Meszaros on the ground that he is a non-supervisory employee, hence not subject to liability under Title VII. Plaintiffs' complaint, in listing Meszaros as a Company employee but not a supervisory employee, implies on its face that Meszaros was a co-worker without supervisory authority. Defendants, however, have not submitted an affidavit setting forth the position Meszaros holds in the Company.

Section 703(a)(1) of the Act, 42 U.S.C. § 2000e–2(a)(1), provides that it shall be an unlawful practice for any "employer" to discriminate in employment on the basis of sex. The term "employer" is defined in Section 701(b), 42 U.S.C. § 2000e(b), as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person". The question posed, therefore, is whether a non-supervisory employee may be considered an "agent" of the Company for purposes of Title VII.

■ My research has disclosed no case which squarely holds that a non-supervisory employee may or may not be an "agent" of his employer in a Title VII action for sexual harassment. Reported cases under Title VII, however, typically contemplate liability for supervisory employees only. *E. g., Tomkins v. Public Service Electric and Gas*

*Co., supra; Ludington v. Sambo's Restaurants, Inc., supra; Heelan v. Johns-Manville Corp.*, 451 F.Supp. 1382 (D.Colo.1978); *Munford v. James T. Barnes & Co.*, 441 F.Supp. 459 (E.D.Mich.1977); *cf. Compston v. Borden, Inc.*, 424 F.Supp. 157 (S.D.Ohio 1976). In *Kyriazi v. Western Electric Co., supra*, the court founded the liability of co-workers for sexual harassment not upon Title VII but upon pendent state law causes of action alone.

It has been held that the definition of "employer", like the rest of Title VII, must be given a liberal construction in light of the Act's remedial purpose, *e. g., Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir. 1977), and that it should be extended to all who significantly control access to employment, whether technically employers or not, *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973); *Vanguard Justice Society, Inc. v. Hughes*, 471 F.Supp. 670, 696 (D.Md.1979). Nevertheless, while a non-supervisory employee who harasses a fellow employee may effectively block access to employment, it would stretch the meaning of the term "employer" too far to bring such an employee within its coverage. I conclude, therefore, that if defendant Meszaros is a non-supervisory employee of Stauffer, he is not subject to liability under Title VII.

■ Because defendants have failed to document Meszaros' employment status on the record, however, the motion to dismiss the complaint as to him cannot be determined at this time. While an inference can be drawn from the complaint that Meszaros was merely a co-worker, it cannot definitely be determined on the pleadings whether he had supervisory authority or not. The motion will, therefore, be denied without prejudice and may be renewed, if appropriate, with proper factual documentation on a motion for summary judgment.

### III. *Motion to Dismiss for Failure to State a Claim*

Defendants move, pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, to dismiss the Title VII claims against the individual defendants and the state law claims against all defendants for failure to state a claim. Defendants primarily argue that the charges are framed in such a vague and open-ended fashion that it is difficult to determine which charges are brought against each of the individual defendants. Defendants also contend that some of plaintiffs' state law claims are not cognizable under the law of New Jersey.

■ Insofar as defendants challenge the complaint's lack of specificity, it must be borne in mind that the test for the sufficiency of a complaint under the *Federal Rules of Civil Procedure* is a liberal one. In *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), the Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *See also Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Third Circuit has "consistently demanded that a civil rights complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs", but has also required that leave to amend be freely granted. *Ross v. Meagan*, 638 F.2d 646 (3d Cir. 1981); *see also Trader v. Fiat Distributors*, 476 F.Supp. 1194 (D.Del.1979) (specific pleading rule of Third Circuit applies to Title VII actions).

■ In light of these standards, plaintiffs have clearly set forth claims under both Title VII and state law sufficient to withstand outright dismissal. Some of the claims, however, are vague and conclusory; none are tied with a reasonable degree of specificity to individual defendants. The complaint's major deficiency is that key factual allegations have been worded in the passive voice. Such statements as "[e]ach plaintiff was personally endangered by hazardous chemicals being placed in the plants above her desk and in her work area" may be probative of the Company's general liability under Title VII for permitting harassment to occur in the workplace, but indicates nothing as to the liability of any particular individual defendant. The sweeping allegations of Paragraph 17, in which all defendants are charged with a conspiracy to

harass plaintiffs in a variety of ways, are likewise deficient. However, rather than requiring plaintiffs to file an amended complaint, I shall leave defendants to their right of discovery.

Defendants contend that plaintiffs have failed to state a legally sufficient claim for the torts of intentional and negligent infliction of emotional distress. Plaintiffs, in response, have withdrawn these claims.

■ Defendants also argue that plaintiffs have failed to state a claim for intentional interference with contractual relations on the ground that parties to a contractual relationship cannot interfere with their own relations. *See O'Connor v. Harms*, 111 N.J.Super. 22, 266 A.2d 605 (App.Div.1970). The case law indicates, however, that, at least with respect to the individual defendants, plaintiffs have stated a legally cognizable cause of action. *See Kyriazi v. Western Electric Co., supra*, 461 F.Supp. 894, at 950; *Raymond v. Cregar*, 38 N.J. 472, 185 A.2d 856 (1962). Defendants' motion to dismiss this claim will, therefore, be denied.

IV. *Motion to Strike Jury Demand and Prayer for Compensatory and Punitive Damages*

■ Defendants move to strike plaintiffs' demand for a jury trial and for compensatory and punitive damages. In light of the fact that plaintiffs' state law claims have been permitted to stand, however, the legal remedies remain available. Since the case presents claims for legal as well as equitable relief, plaintiffs' demand for a jury trial will not be stricken. *See Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

V. *Motion to Quash Service of Process*

■ Defendants move to quash service of process upon the individual defendants because not served in accordance with the *Federal Rules of Civil Procedure* or the New Jersey Court Rules. Plaintiffs served these defendants by leaving the summons and a copy of the complaint with an office manager at defendant Stauffer's Yardville, New Jersey plant.

Because the individual defendants were not properly served, service of process against them will be quashed and plaintiffs will be permitted to re-serve the complaint in a proper fashion. *Gipson v. Township of Bass River*, 82 F.R.D. 122 (D.N.J.1979). Service is to be effected by July 1, 1981. The corporate defendant is to provide plaintiffs with the home addresses of the individual defendants forthwith.

Defendants are requested to submit a form of order in accordance with this opinion.